# SUPREME COURT.

## JOHN REZNOR, appellant, agt. STEPHEN D. WEBB, respondent.

The term "administrator" added to the name of the payee of a note, is a mere word of description, in no respect essential to the right of the payee to sue.

Where such a note is given to the payee by the maker to secure a debt due from the latter to the heirs at law of the payee's deceased wife, the payee can sue and recover upon it in his own name, for the benefit of those who may be entitled ultimately to its avails.

*Seventh District, General Term, March,* 1867.

*Before* J. C. SMITH, E. D. SMITH *and* JOHNSON, *Justices.*

IN the year 1859, the defendant was indebted to one Cynthia Eagle, formerly Cynthia Webb. After the creation of the indedtedness and while she was the owner, the plaintiff and said Cynthia intermarried. In 1860 said Cynthia died intestate, leaving the plaintiff, her husband, her survivor. On the 11th day of July, 1863, the defendant made and delivered his promissory note to the plaintiff to secure the payment of said indebtedness, and payable to the plaintiff, administrator, or order.

Before the delivery of the note the plaintiff tock-out letters of administration upon his wife's estate in Allegany county.

Upon this note the action is brought. The referee reported in favor of the defendant, finding that an ante-nuptial agreement was made by which the plaintiff was not to have any interest in her property, without any eivdence in the case that a single individual had ever seen any paper containing any such agreement. The referee based his findings upon simply the declaration of the plaintiff, and that too, against the positive testimony of the plaintiff that no such agreement ever existed. The exceptions arise as to the introduction of such evidence and to the findings of the referee.

HAKES & STEVENS, *attorneys and counsel for plaintiff, appellant.*

I. The referee erred in overruling the plaintiff's several objections to the introduction of the evidence offered by the defendant on the trial, to which exceptions were taken.

1. The referee erred in deciding "that the paper was lost or in the plaintiff's possession or under his control." The only evidence relied on for such a decision was by the witness David Webb, viz: "I heard plaintiff speak about an ante-nuptial contract with Cynthia before her death. I never saw it. I suppose my sister had it." This is not evidence of even the existence of a *written* contract, much less that one was *subscribed* by any one. It is no evidence that any such agreement, signed or otherwise, was in the plaintiff's possession at the time of the trial or at any previous time. If a written agreement of that kind ever existed, it is to be presumed that if she had the precaution to make any such agreement at all, she would be likely to leave it with her relatives in preference to leaving it with her husband, who would be the only person having an interest adverse to hers, under such a contract. At the time of that decision by the referee, it had not appeared that the plaintiff had been appointed administrator, so as to entitle the defendant to any presumption that because he was administrator he would have her ante-nuptial contract. But if it had appeared that the plaintiff was administrator, he would then be the only person who could maintain an action on the note, whether there was or was not such ante-nuptial agreement.

2. The referee erred in overruling the plaintiff's objections to the following question to the witness, David Webb, viz: "What did he state the agreement was?" There had been no proof of its existence or loss. "If the instrument is *lost* the party is required to give *some* evidence that such *paper* once existed. (1 *Greenl. on Ev.*, § 558.)

" The proof of the loss of a document necessarily involves some *descriptive proof of the document* itself." (*Id.; Note.*)

The confessions of the party are not competent evidence of the contents, except in corroboration of other evidence. " After the loss of a deed has been established, the secondary evidence of the contents or substance of the contents of *its operative parts* must be *clear* and *direct*, and *its execution must be distinctly proved.* (*Id.;* 3 *Coms.* 428.)

" The admissions of a party will not be competent to prove the contents of a record or *an instrument which the law requires* to be in writing, unless it is in those cases in which the admission is made in open court at the trial for the purpose of obviating the production of written evidence." (2 *Wait's Law and Prac.* 398, *and cases there cited.*)

An ante-nuptial agreement is one which is required by the statute of frauds, to be in *writing, subscribed* by the party. (2 *Stat. at Large,* 141; § 2, *sub.* 3.)

To allow the mere declarations of a party to establish a contract required by the statute of frauds to be in writing without any proof of the *corpus* or existence of the writing itself, would operate as an evasion of the statute and render it a nullity. It would only need enough perjury to establish any agreement directly against the positive evidence that no such writing ever existed as in this case.

II. The referee erred in his findings, to which exceptions are taken.

1. The evidence was insufficient to establish the ante-nuptial agreement.

2. Even if an ante-nuptial agreement existed, the plaintiff either by virtue of his appointment as administrator or as surviving husband, could maintain the action and account to the parties entitled to the proceeds.

An executor can maintain a suit either in his own name or as executor upon a note given to him as executor, for a debt due the testator at the time of his decease. (*Merritt* agt. *Seaman,* 2 *Seld.* 168.)

Without any letters of administration the plaintiff had so far reduced the debt to his possession in taking the note in his name, that he could maintain the action as being the party beneficially interested. (*Ryder* agt. *Hulse*, 24 *N. Y. R.* 372 ; *Ransom* agt. *Nichols*, 22 *N. Y. R.* 119.)

If the husband does not take out letters, he shall be presumed to have assets sufficient to pay his wife's debts. (2 *N. Y. Stat. at Large*, 76, § 29.)

After having taken the note in his own name, he can recover on the note, and it does not lie with the defendant to set up an ante-nuptial agreement. The rights under any ante-nuptial agreement are to be settled with the surviving husband and the intestate's next of kin. If the plaintiff had died without administering and without bringing an action on this note, his personal representatives would alone have been entitled to maintain the action, and not the representatives of the deceased wife. (*Id.; Lockwood* agt. *Stockholm*, 11 *Paige*, 87.)

The object of letters of administration on the wife's estate, is to have some responsible person who may be answerable to *her creditors*, if there should be any, and it is only a question for creditors. (*Id. p.* 91.)

A debtor to her estate, and especially one like the defendant, who has given his own note to the plaintiff, will not be permitted to deny the payee's right to recover. Unless the plaintiff recovers in this action, the defendant wholly escapes the payment of this debt. It would be a bar to the action which the plaintiff, or in case of his decease, his representatives might hereafter bring on this note. It is therefore claimed that the judgment appealed from should be reversed.

H. HOLLIDAY, *attorney, and*
W. M. HAWLEY, *counsel for defendant, respondent.*

The defendant claims to have, and presents to this court

three separate and distinct grounds of defense to this action.
They will be separately considered and are as follows :

I. The only consideration of the note in question is the
one half of a debt originally due from the defendant to his
two sisters, Sarahette Webb and ·Cynthia Reznor (late the
wife of the plaintiff). Cynthia, before her marriage with
the plaintiff, was the widow of William H. Eagle, by whom
she had a son some five or six years of age, whose name was
Frank Eagle. The plaintiff married Cynthia in the fall of
1859. She died in January, 1860. At the time of her
marriage and death, she was the owner of the demand in
question. The only evidence of its existence being an unexe-
cuted mortgage, which had been prepared (but not signed)
to secure the whole demand to both sisters, this mortgage
was kept in possession of Sarahette, and had never been in
possession either of Cynthia, or the plaintiff. These facts
are fully proved and not disputed, and are substantiallv so
found by the referee. Some three years after the death of
Cynthia, and before the death of Frank Eagle, the plaintiff,
under pretence that he was acting as administrator of his
wife,, and guardian for Frank, induced the defendant to give
to him the note in question, it being for Cynthia's share (the
one-half) of said debt, under and with the express under-
standing and agreement, that it was to be left in the hands
of Sarahette Webb for the benefit of Frank, if he should live
to want it ; if not it was to remain in the hands of the heirs
of the Webb estate.

The proof of these facts is found in the testimony of
Stephen D. Webb, the defendant, and is not denied or con-
tradicted, and are so found by the referee. The only claim
the plaintiff pretends to have to this demand, is as the sur-
viving husband of Cynthia. The defendant claims that before
the marriage and in view of that event, the plaintiff executed
and delivered to the said Cynthia an agreement in writing,
known as an ante-nuptial agreement, whereby he was not to
have or make any claim to her separate property, and by

which he waived and released all claim to and control over the same, which he otherwise might have had as surviving husband.

For proof this fact see the testimony of David J. Webb, Polly Webb, Levi Webb, Stephen D. Webb, and Sarahette .Webb. These witnesses testify to the admissions of the plaintiff as to the existence of the *ante-nuptial* agreement, made by him when he brought home the body of his dead wife, and was then attending her funeral and would not be likely to make false statements in that respect. The plaintiff denies the existence of such agreement, but nowhere denies that he made each, every and all of said statements.

The referee has found, as a question of fact, that such agreement was executed and delivered. See his report. Such finding should be held conclusive, and such being the case, it follows that the plaintiff cannot recover in this action.

II. Shortly before the death of Cynthia she made a full and complete disposition of all her separate property, including the demand in question, by the consent and assistance of the plaintiff. See the testimony of David J. Webb, Elizabeth Holliday, Sarahette Webb, Polly Webb, Melissa Woolever, John Weldy and Levi Webb. No part of this testimony is denied or contradicted by the plaintiff, and the facts are substantially so found by the referee.

In making such disposition of her property, Cynthia named each article of her property, and to whom the same was given—placed it in the hands of the plaintiff, with directions to deliver the same, who then and there promised his dying wife to make such delivery, and which promise he afterwards faithfully performed, as will be seen by his own admission to the witness Weldy. "That he had done as she had requested and had cleared his skirts. That he had made delivery to each and such ones as she requested." It is insisted that this is a good and valid disposition of the property, as a gift, and actual delivery, or as a *donatio mortis causa* (3 *N. Y. R.* 93,

*and cases there cited*).   By that disposition the demand in question was to go to her son Frank Eagle, if he should live to want it.   If not it was to remain in the hands of the heirs of the Webb estate, where it then was.

If these views are correct it follows that the plaintiff has no interest in the demand in question, and of course, cannot recover in this action.

III.  The defendant insists that if the plaintiff was in fact and in law the owner of the demand, as surviving husband of Cynthia, he cannot recover in his individual capacity as owner, but only through administration of his wife's estate. The demand had not been recovered by him, nor in his possession before the death of his wife, nor was it in her possession, but was and always had been in the possession of her sister Sarahette Webb.   It was a mere chose in action, for which there was no written evidence, except an unexecuted mortgage, which had been prepared and left in possession of Sarahette to be signed by the defendant, and was to include the demands due to both Sarahette and Cynthia.   These facts are testified to by several witnesses, are not denied by the plaintiff, and are substantially so found by the referee.

It is insisted that to enable the plaintiff to recover this demand, he must resort to administration of his wife's estate, and in support of this position, the court is repectfully referred to the subjoined, unreported decision of the general term in the eighth district, upon the very point here under consideration, and the cases therein cited.

That case, it will be seen by the title, arose between this plaintiff and David J. Webb (who is a brother of the defendant in this action) with others, and was for the foreclosure and collection of a mortgage given by the defendant in that case to the same persons (Sarahette and Cynthia) to whom the defendant in this case was indebted, both actions were tried at the same time, before the same referee, and were similar in character, except that in that case the plaintiff

sued as administrator of his wife; but it turned out in proof that the letters were issued by the surrogate of Allegany county, whereas the wife at the time of her death resided and died in Canandaigua, Ontario county, thus by statute giving exclusive jurisdiction of the administration to the surrogate of Ontario. The court (referee) held that the letters issued by the surrogate of Allegany were void, and for that reason non-suited the plaintiff. The cause was appealed to the general term in the eighth district, and the plaintiff's counsel there made the point among others, that the plaintiff being owner of the demand as surviving husband, could recover in his individual capacity, and which appears to have been the only point considered by that court.